.[14654. In Bank.—March 27, 1893.]

# BLAND R. DAVES ET AL., RESPONDENTS, *v.* THE SOUTHERN PACIFIC COMPANY ET AL., APPELLANTS.

NEGLIGENCE — MASTER AND SERVANT — FELLOW-SERVANTS — GRADES OF EMPLOYMENT — SUPERIOR SERVANT. — The law of this state respecting the negligence of a fellow-servant, where there is no want of ordinary care upon the part of the employer, as set forth in section 1970 of the Civil Code, recognizes no distinction growing out of the grades of employment of the respective employees. nor does it give effect to the circumstance that the fellow-servant, through whose negligence the injury was received, was the superior of the plaintiff in the general service in which they were both employed.

ID.—DUTY OF RAILROAD COMPANY TO EMPLOYEES— DELEGATION OF PERFORMANCE— RISK OF SERVICE. —The duties which a railroad corporation owes to its servants, and which it is required to perform, are to furnish suitable machinery and appliances by which the service is to be performed, and to keep them in repair and order; to exercise ordinary care in the selection and retention of sufficient and competent servants to properly conduct the business in which the servant is employed, and to make such provisions for the safety of employees as will reasonably protect them against the dangers incident to their employment. The performance of these duties cannot be shifted by it to a servant so as to avoid responsibility for injury caused to another servant by its omission; nor is their negligent performance one of the ordinary risks of the service impliedly assumed by the employee by his contract of employment.

ID.—INJURY TO SECTION HAND—NEGLIGENCE OF FELLOW-SERVANT— ACTION OF SECTION FOREMAN — TEST OF PERSONAL DUTY OF EMPLOYER. — Whether the negligent act of a section foreman of a railroad company, by which an accident is caused to a section hand, is a personal duty which the company owes to the section hand as its employee, or whether the accident is "in consequence of the negligence of another person employed by the same employer in the same general business," within the meaning of section 1970 of the Civil Code, must be determined not from the grade or rank of the section foreman, but from the character of the act causing the injury. If the act is one which it is the duty of the company to perform towards the section hand, the section foreman in the performance of such duty, acts as the agent of the company, for which the employer is responsible; but if it is not one of the duties of the company, the foreman and section hand are fellow-servants, and the foreman is alone responsible for an accident to the section hand resulting therefrom.

| | |
|---|---|
| 98 | 19 |
| 99 | 367 |
| 98 | 19 |
| 100 | 289 |
| 100 | 566 |
| 98 | 19 |
| 102 | 392 |
| 102 | 463 |
| 102 | 582 |
| 98 | 19 |
| 103 | 264 |
| 98 | 19 |
| 111 | 405 |
| 98 | 19 |
| 113 | 603 |
| 98 | 19 |
| 114 | 182 |
| 98 | 19 |
| 117 | 423 |
| 98 | 19 |
| f128 | 54 |
| 98 | 19 |
| f135 | 439 |
| 98 | 19 |
| 140 | 512 |

ID. — NEGLECT OF SECTION FOREMAN TO KEEP SWITCH OPEN — DEATH OF SECTION HAND — RAILROAD COMPANY NOT LIABLE — RISK OF NEGLIGENCE OF FELLOW-SERVANT. — The duty to close a switch which has been opened by a section foreman to let a hand-car pass in upon the side-track, is a duty belonging to a servant, and is not a personal duty which the railroad company owes to a section hand employed by the foreman, while engaged in the performance of his duties as its employee, and the company is not liable for the death of such employee, caused by the negligence of the foreman in leaving the switch open; but such negligence is the negligence of a fellow-servant employed in the same general business, within the meaning of section 1970 of the Civil Code, and the risk of such negligence is a risk impliedly assumed by the section hand in accepting the employment.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John D. Bicknell, Bicknell & Trask,* and *McLachlan & York,* for Appellants.

*P. C. Tonner, J. W. Swanwick,* and *A. W. Hutton,* for Respondents.

FITZGERALD, J. — This action is brought by the widow and minor daughter of James Daves, deceased, to recover damages for loss suffered by his death through the alleged negligence of the defendants.

The case was tried by a jury, and a general verdict rendered against the defendants, the Southern Pacific Company and Bresnahan, for nine thousand dollars. It was also specially found by the jury that the defendant, Bresnahan, did not close the switch after he opened it to let the hand-car upon the side-track.

This appeal is taken by both defendants from the judgment and the order denying their motion for a new trial.

It appears that the corporate defendant owns and operates a line of railroad between the cities of Los Angeles and Colton, in this state; that the defendant, Bresnahan, was its section foreman, and, as such, had charge of a portion of its track, with power to employ and discharge the men employed to work under him; that James Daves, the deceased, was a section hand employed by Bresnahan to work under him, and was engaged in the performance of his duty as such at the time of the acci-

dent which caused his death; that on the morning of the accident, and shortly before it occurred, Bresnahan, with eight of the section men, one of whom was Daves, placed a hand-car on the main track for the purpose of going to a point on the section to make repairs. The hand-car was then run by them some three hundred feet to a switch, which was unlocked and thrown open by Bresnahan, and the hand-car passed onto the side-track to clear the main track for the west bound passenger train, then nearly due and in sight; that immediately thereafter, Daves was engaged in doing something about the hand-car, and was under the west end of it when the train came up, and the switch being open, the train ran onto the side-track, colliding with the hand-car and killing Daves.

Whether the switch was closed after it was opened by Bresnahan was a controverted point at the trial and was submitted specially to the jury. The jury found that he did not close the switch, and as there is evidence to support the verdict, it follows that the accident was caused by the negligence of Bresnahan, and the verdict against him cannot be disturbed.

As to whether the verdict will be permitted to stand as to the defendant corporation depends upon whether Bresnahan and Daves were fellow-servants within the meaning of section 1970 of the Civil Code, which reads as follows: "An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee." This section was construed by this court in *Collier* v. *Steinhart*, 51 Cal. 116, and in *McLean* v. *Blue Point Gravel Min. Co.*, 51 Cal. 255. In the latter case it appears that the defendant was engaged in blasting rock on its mine. Plaintiff was in its employ as a workman, and one Kegan was its "foreman of all work," with authority to employ and discharge the men working under him. Plaintiff was injured while at work by being struck with a rock thrown from a blast, through Kegan's negligence in failing to notify him that the blast was to be fired. The court, in the application of this section to these facts, say: "The injury to

the plaintiff was caused by the negligence of Kegan, the fore-
man of defendant, who was a fellow-servant with the plaintiff,
'another person employed by the same employer in the same
general business,' that is, the business of working the mine of
the defendant, Kegan being in the blasting, and the plaintiff in
the hydraulic department of the 'general business.' The section
of the Civil Code already cited declares that to such a case the
rule of *respondeat superior* shall not apply, unless there has been
want of ordinary care upon the part of the defendant *in the
selection of the culpable employee.* But the fact was, as found by
the court below, that there had been no such want of ordinary
care on the part of the defendant; Kegan, the 'foreman,' being
found to be 'skillful, competent,' and a proper person to per-
form the duties with which he was charged. 'The law of this
state respecting this subject,' as set forth in the code referred
to, recognizes no distinction growing out of the grades of employ-
ment of the respective employees; nor does it give any effect to
the circumstance that the fellow-servant, through whose negli-
gence the injury came, was the superior of the plaintiff in the
general service in which they were, in common, engaged, and
the alleged distinction in this respect insisted upon by the appel-
lant's counsel, founded, as he claims, on the general principles
of law and the adjudged cases, requires no examination at our
hands. (*Collier* v. *Steinhart,* 51 Cal. 116.)"

In *Congrave* v. *S. P. R. R. Co.,* 88 Cal. 360, it was said by
Justice McFarland, that section 1970 "not only restates the
rule first established by judicial decision as to injury received
through the negligence of a fellow-servant, but it clears away
to a great extent the difficulties which may have existed as to
the meaning of 'fellow-servants.' It declares them to be those
employed 'in the same general business.'" And in citing with
approval *McLean* v. *Blue Point Gravel Min. Co.,* 51 Cal. 255,
he uses the following language: "It is clear that in deciding
this case the court determined that the code swept away the
distinctions which appear in some of the 'adjudged cases' on the
subject of fellow-servants. *Collier* v. *Steinhart,* 51 Cal. 116,
referred to in the opinion, is still stronger to the point decided.
Both of these cases were approved in *McDonald* v. *Hazeltine,* 53
Cal. 35, which was also a case where an employee was injured

through the carelessness of a foreman.   These cases were again followed and approved in *Stephens* v. *Doe*, 73 Cal. 26, where it was held that 'the foreman of a mine, and a miner employed to work under his directions, are fellow-servants; and the owner of the mine is not liable for injuries caused to the latter through the negligence of the foreman, unless he failed to use ordinary care in the selection of the foreman.' The same doctrine was announced in *Brown* v. *Central Pacific R. R. Co.*, 72 Cal. 523; and *Fagundes* v. *Central Pacific R. R. Co.*, 79 Cal. 97."

In the *Fagundes Case*, just cited, plaintiff's intestate was a laborer employed by the defendant to work on its track.   The offending servants were, respectively, the conductor of a train and a track-walker, whose duty it was "to see that the track was clear of obstructions and to signal when they existed." The deceased lost his life through the track-walker's negligent interference with a switch, and the conductor's negligence "in not being sufficiently on the alert to prevent" such interference.   In that case the court held that as "there is nothing in the evidence tending to show any negligence on the part of the defendant in the selection of the employees whose carelessness caused the casualty," it could not be held responsible.

The principle declared in the section of the code referred to, and upon which the decisions in the foregoing cases rested, was settled by the highest judicial authority in this country long before the adoption of the code; but the remarkable contrariety of judicial decisions upon the subject in other states has arisen out of the great difficulty met with in the application of it to the facts of the particular case to be decided.   But in the consideration and application of this principle to the case before us, we do not propose to enter into a discussion of the relation which the section foreman of a railroad corporation sustains toward his employer with respect to the duties pertaining to his employment, except in so far as the subject of such relation is necessary to be considered in connection with the character of the particular act itself by which the accident was caused, for the purpose of determining whether such act was a personal duty which the defendant corporation owed to the deceased as its employee,

or whether the loss caused by the act complained of was " in consequence of the negligence of another person employed by the same employer in the same general business." This must be determined not from the grade or rank of the section fore- man, but from the character of the act performed by him. If the act was one which it was the duty of the employer to per- form towards it servants, and one of them negligently per- formed it to the injury of another servant in the same common employment, then the offending servant in the performance of such duty acted as the representative or agent of his employer, for which the employer is responsible; if it was not, then they were fellow-servants, and the offending servant is alone responsible.

The duties which a railroad corporation owes to its servants, and which it is required to perform, are to furnish suitable machinery and appliances by which the service is to be per- formed, and to keep them in repair and order; to exercise ordinary care in the selection and retention of sufficient and competent servants to properly conduct the business in which the servant is employed, and to make such provisions for the safety of employees as will reasonably protect them against the dangers incident to their employment. The performance of these duties cannot be shifted by it to a servant so as to avoid responsibility for injury caused to another servant by its omis- sion; nor is their negligent performance one of the ordinary risks of the service impliedly assumed by the employee by his contract of employment.

Was then the act or omission which caused the injury a per- sonal duty which the defendant corporation owed to the deceased while he was engaged in the performance of his duties as its employee? If it was, and the deceased was not at fault, then the corporate defendant is liable, otherwise not.

It appears that Bresnahan, through whose negligence it is clear that Daves was killed, was the section foreman of the defendant corporation, and, as such, had charge of about eight miles of its track, including that portion of it where the accident occurred. It was his duty to keep the track and switches in repair and order, and free from obstructions, so as to practically insure the safety of trains passing over it. He had undisputed

control of the section men employed to work under him, and was vested with authority to employ and discharge them. As to whether he was the representative of the employer, with respect to the performance of these duties, we are not called upon, in view of the facts, to decide, for the reason that the act which caused the injury, out of which this action arises, is clearly not embraced within them.

It is not claimed that the corporation did not exercise ordinary care in the selection of Bresnahan as foreman, or that the switch, which he negligently left open, and by which the loss was suffered, was unsuitable or defective. But it is insisted that the corporate defendant violated a duty which it owed to Daves by not providing him with a reasonably safe place to perform his work. That the place was not safe because "a train was coming when the switch was open," in consequence of which he lost his life.

The place, as we have seen, where the accident occurred, was the side-track on which the hand-car had been run from the main track to avoid the passenger train, then almost due, and in sight. The place was, of itself, in the first instance, a reasonably safe one, and was resorted to, under the circumstances, for that very reason. The track and switches on Bresnahan's section, in so far as anything appears to the contrary, were in good condition, and so was the hand-car, with the exception of some disarrangement in the brake, which, however, had nothing to do with the injury. The servants were sufficient in number and competent for the purposes of the employment. It is plain, therefore, that the death of Daves was not caused by the violation of any duty which the master owed to him, but by the negligent act of Bresnahan, who with respect to the performance of that particular act, was the fellow-servant of Daves. If a brakeman or trainman, who it appears were intrusted with keys to the switch, or one of the section men had been guilty of the negligent act complained of, we do not think that it would be seriously contended here that such act was the act of the master; and such would undoubtedly be the case if a switchman had been regularly employed to attend that switch, and he negligently performed the act referred to instead of Bresnahan; for a switchman in using and operating a switch is

no more the agent of the master than is an engineer who is engaged in running a locomotive. It is the duty of the master to provide a suitable switch and competent servants for its operation; when he has done this, his duty is at an end and his liability ceases. The keeping of it in position and its use and operation is a duty belonging to the servant, the negligent performance of which, to the injury of another servant employed in the same general business, is a risk which the injured servant assumed when he took the employment, and for which the master is not liable. It is not denied that Bresnahan was a competent and experienced foreman, so that there was no neglect of duty by the master with respect to his selection. But the negligent act complained of was performed by him in the course of the work upon which they were all engaged, and by one who, so far as the particular act was concerned, was clearly not the agent of the master but the fellow-servant of Daves. The place was therefore made dangerous by the culpable negligence of a fellow-servant, and this, notwithstanding the fact that his grade or rank at the time happened to be superior to that of Daves. It therefore follows that the consequences flowing from a place made unsafe under such circumstances are not chargeable to the master. The duty violated did not relate to the place of work, but to the negligent use of an appliance or instrumentality which was proper and suitable for the purpose for which it was furnished by the master, and such use of it was simply a detail of the work or management of the business, therefore a duty of the servant, which he, and not the master, was bound to perform.

From these views, it is clear that the negligence of Bresnahan in leaving the switch open in the manner and with the unfortunate result indicated, was, notwithstanding his superior rank, the negligence of a fellow-servant within the meaning of section 1970 of the Civil Code, therefore a risk impliedly assumed by Daves when he took the employment, for which the corporate defendant cannot be held responsible.

As this disposes of the controlling question in the case, the others discussed in relation to the instructions are not necessary to be considered.

Let the judgment and order be affirmed as to the defendant

Bresnahan, and reversed as to the corporate defendant, and the cause remanded for a new trial.

DE HAVEN, J., McFARLAND, J., HARRISON, J., GAROUTTE, J., PATERSON, J., and BEATTY, C. J., concurred.

Rehearing denied.